Exhibit "A"

1              IN THE UNITED STATES DISTRICT COURT

2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                      SAN JOSE DIVISION

4

5     GARY KREMEN,              )   C-98-20718-JW
                               )
6              PLAINTIFF,       )   NOVEMBER 14, 2005
                               )
7                  V.           )
                               )
8     STEPHEN MICHAEL COHEN,    )   PAGES 1-24
      ET AL.,                   )
9                               )
               DEFENDANTS.      )        COPY
10    _____  )

11            THE PROCEEDINGS WERE HELD BEFORE

12          THE HONORABLE UNITED STATES DISTRICT

13                   JUDGE JAMES WARE

14    A P P E A R A N C E S :

15    FOR THE PLAINTIFF:  IDELL, BERMAN, SEITEL & RUTCHIK
                          BY:  RICHARD J. IDELL
16                        465 CALIFORNIA STREET
                          SUITE 300
17                        SAN FRANCISCO, CALIFORNIA
                          94104
18

      FOR THE DEFENDANTS: THE LAW OFFICES OF JOHN GOALWIN
19                        BY:  JOHN GOALWIN
                          350 SOUTH FIGUEROA STREET
20                        SUITE 499
                          LOS ANGELES, CALIFORNIA  90071
21
                          THE LAW OFFICES OF ROGER
22                        AGAJANIAN
                          BY:  ROGER AGAJANIAN
23                        THE ATRIUM BUILDING
                          19200 VON KARMAN AVENUE
24                        IRVINE, CALIFORNIA 92612

25    OFFICIAL COURT REPORTER: IRENE RODRIGUEZ, CSR, CRR
                          CERTIFICATE NUMBER 8074

                                                        1

                      U.S. COURT REPORTERS

```
 1   SAN JOSE, CALIFORNIA          NOVEMBER 14, 2005
 2                P R O C E E D I N G S
 3
 4        (WHEREUPON, COURT CONVENED AND THE
 5   FOLLOWING PROCEEDINGS WERE HELD:)
 6        THE CLERK:  CALLING THE FIRST MATTER
 7   CIVIL 98-20718, GARY KREMEN VERSUS STEPHEN MICHAEL
 8   COHEN.  ON FOR HEARING ON WARRANT REGARDING ORDER
 9   TO SHOW CAUSE ON CONTEMPT.
10        COUNSEL, COME FORWARD AND STATE YOUR
11   APPEARANCE.
12        MR. GOALWIN:  JOHN GOALWIN.  I PAID THE
13   FEES AND I'M ADMITTED TO THE CENTRAL DISTRICT, AND
14   I PAID THE FEES FOR PRO HAEC VICE AND I'M HERE WITH
15   ROGER AGAJANIAN.
16        MR. AGAJANIAN:  ROGER AGAJANIAN,
17   A-G-A-J-A-N-I-A-N.
18        THE COURT:  GOOD AFTERNOON, COUNSEL.
19        AND, MR. COHEN, I PRESUME.
20        DEFENDANT COHEN:  YES.
21        THE COURT:  YOU ARE BEFORE THE COURT AS A
22   RESULT OF THE COURT HAVING ISSUED A WARRANT GROWING
23   OUT OF A CIVIL ACTION PENDING IN THE COURT AND I
24   WAS ADVISED OF SOME TIMING THAT YOU HAD BEEN
25   ARRESTED ON THE WARRANT AND WOULD BE BROUGHT BEFORE
```

2

U.S. COURT REPORTERS

15:23:30 1          THE COURT:  EXACTLY.  I WANT ALL OF THAT

15:23:32 2  OUTLINED SO THAT YOU ADVISE ME WHAT IS OUTSTANDING.

15:23:38 3          MR. IDELL:  SO YOU DON'T EXPECT US TO

15:23:40 4  HAVE A DEPOSITION MEETING BY MONDAY?

15:23:46 5          THE COURT:  NO, NO.  IN FACT, I WANT TO

15:23:48 6  ACKNOWLEDGE THAT IT'S REASONABLE ON YOUR PART TO

15:23:50 7  WANT TO HAVE CERTAIN DOCUMENTS DELIVERED TO YOU

15:23:52 8  BEFORE YOU ENGAGE IN THE DEPOSITION BECAUSE IT

15:23:56 9  MAKES IT AN INFORMED DEPOSITION.

15:23:58 10          THE CLERK:  REMAND HIM INTO CUSTODY?

15:24:06 11          MR. GOALWIN:  MR. COHEN WOULD LIKE TO

15:24:08 12  ADDRESS THE COURT.

15:24:08 13          THE COURT:  MR. COHEN.

15:24:10 14          THE DEFENDANT:  FIRST OF ALL, I WANT TO

15:24:12 15  MAKE A COUPLE OF COMMENTS IF I CAN.  I AM AWARE OF

15:24:14 16  THE CONTEMPT ORDERS THAT HAVE BEEN ISSUED AGAINST

15:24:18 17  ME AND I'M FAMILIAR WITH THE TERMS THAT THE COURT

15:24:20 18  HAD SET AND I HAD A DUTY TO APPEAR BEFORE YOUR

15:24:24 19  COURT ONCE I BECAME AWARE OF THAT AND I CLEARLY DID

15:24:30 20  NOT APPEAR.

15:24:32 21          I WANT TO MAKE IT CLEAR TO THE COURT THAT

15:24:36 22  AT THE TIME THAT I WAS SERVED WITH THIS LAWSUIT I

15:24:38 23  WAS LIVING IN MEXICO AND I CONTINUE TO LIVE IN

15:24:44 24  MEXICO AND I CAME TO THE UNITED STATES AND I

15:24:48 25  PURCHASED THE HOUSE THAT, THAT MY EX-WIFE ENDED UP

                                                            20

15:24:52 1   WITH AND THAT HOUSE, OF COURSE, WENT TO THE

3  ':58 2   PLAINTIFF.

15:24:58 3           I THEN MOVED BACK TO MEXICO AND I

15:25:00 4   UNDERSTAND THAT A YEAR OR SO LATER THE COURT

15:25:04 5   ORDERED THAT HOUSE TURNED OVER TO MR. KREMEN.

15:25:08 6           DURING THAT PERIOD OF TIME I WAS IN

15:25:10 7   MEXICO.  THIS WAS NOT A SITUATION WHERE I, I PUT MY

15:25:14 8   THUMB UP AT THE COURT AND RAN TO MEXICO NOT TO PAY

15:25:20 9   THE JUDGMENT.

15:25:20 10          I WAS LIVING IN MEXICO.  THE OPERATIONS

15:25:24 11  ORIGINALLY FOR SEX.COM WERE IN MEXICO AND THE WHOLE

15:25:30 12  COMPLETE BUSINESS WAS LOCATED IN MEXICO AND I HAD

15:25:36 13  OBLIGATIONS UNFORTUNATELY TO THE MEXICAN GOVERNMENT

:40 14   AND TO THE EMPLOYEES IN MEXICO, OBLIGATIONS WHICH

15:25:44 15  INVOLVED CRIMINALITY RELATIVE TO THE COURT ORDERED

15:25:50 16  ME NOT TO TRANSFER ANY FUNDS IN THIS NOVEMBER 27TH,

15:25:56 17  2000 ORDER.

15:25:58 18          UNFORTUNATELY, YOUR HONOR, IN OUR

15:26:00 19  BUSINESS WE WERE DOING WIRE TRANSFERS ON A DAILY

15:26:06 20  BASIS AND WIRE TRANSFERS AS MR. IDELL MENTIONED

15:26:08 21  WERE PREVIOUSLY ORDERED.

15:26:10 22          I WENT AND RETRIEVED TWO CASHIER'S

15:26:14 23  CHECKS.  I ALSO CONTACTED A BANK OVERSEAS.  I WAS

15:26:18 24  SUCCESSFUL IN HAVING THEM RETURN THE MONEY AND THE

15:26:22 25  WELLS FARGO BANK RECORDS CLEARLY SHOW THAT.

21

U.S. COURT REPORTERS

15:26:24 1          I RETRIEVED TWO CASHIER'S CHECKS.  I, I

:28 2      TOOK THOSE TWO CASHIER'S CHECKS AND I GAVE THEM TO

15:26:32 3      MY ATTORNEY AND THEY WERE FORWARDED TO THE COURT.

15:26:34 4          AND PRIOR TO THAT HAPPENING, ONCE I

15:26:38 5      BECAME AWARE OF THE COURT ORDER, I NOTIFIED

15:26:40 6      MR. KREMEN BY PHONE THAT, THAT THE WIRE TRANSFERS

15:26:44 7      HAD TAKEN PLACE AND I WAS IN THE PROCESS OF

15:26:48 8      RETRIEVING THOSE FUNDS.

15:26:48 9          UNBEKNOWNST TO ME THE FIBER COMPANIES

15:26:54 10     THAT THOSE FIVE CASHIER'S CHECKS WERE ISSUED TO

15:26:58 11     WENT TO THE MEXICAN GOVERNMENT AND FILED CRIMINAL

15:27:00 12     CHARGES.  I WAS DETAINED.

15:27:02 13         IT WASN'T A SITUATION WHERE I JUST SAID

:06 14     I'M NOT COMING BACK TO YOUR COURT.  I WAS

15:27:08 15     PHYSICALLY DETAINED, A BAIL HAD TO BE SET AND I HAD

15:27:14 16     PROCEEDINGS IN MEXICO.

15:27:14 17         A MEXICAN CITIZEN HAD TO PUT UP HIS

15:27:18 18     PROPERTY AND I HAD TO PUT UP A BAIL TO GUARANTEE MY

15:27:22 19     APPEARANCE.

15:27:22 20         I WAS PROHIBITED IN A PERIOD OF TIME OF

15:27:24 21     NOT LEAVING MEXICO.

15:27:26 22         ON TOP OF THAT I WAS CONTACTED BY THE

15:27:30 23     RECEIVER IN THE CASE GEORGE FISHER.  I TOLD HIM

15:27:34 24     THAT I WOULD BE MORE THAN HAPPY TO COOPERATE WITH

15:27:36 25     HIM.

                                                        22

15:27:36 1          I OFFERED DEPOSITIONS TO THE, TO THE

? :40 2      PLAINTIFF AND MY ATTORNEY MR. DORBAND AT THE TIME.

15:27:46 3          I KEPT GETTING SANCTIONS AND I WAS STUCK

15:27:48 4      IN A SITUATION THAT THERE WASN'T MUCH I COULD DO.

15:27:52 5          DURING THAT PERIOD OF TIME I SUFFERED A

15:27:54 6      HEART ATTACK AND I REQUIRED SURGERY.  MY OBLIGATION

15:27:58 7      -- WHEN MY OBLIGATION IN MEXICO ENDED I CLEARLY HAD

15:28:02 8      A DUTY TO APPEAR BEFORE YOUR COURT.  INSTEAD I

15:28:06 9      NEEDED SOME SURGERY AND I TOOK OFF OVERSEAS TO HAVE

15:28:10 10     THE SURGERY.

15:28:10 11         THE COURT:  MR. COHEN, IT SOUNDS LIKE

15:28:12 12     THAT THERE ARE LOTS OF EXPLANATIONS FOR VARIOUS

15:28:14 13     PARTS OF THIS, AND AS I SAID, I'M INTERRUPTING YOU

: :18 14     NOW BECAUSE THERE WILL BE AN OPPORTUNITY FOR YOU TO

15:28:20 15     OFFER THAT.

15:28:20 16         I CAN IMAGINE HOW ANXIOUS YOU ARE TO GET

15:28:24 17     THAT TOLD AND BUT AS I SAID I WANT IT UNDER OATH

15:28:28 18     BECAUSE THEN IT'S --

15:28:30 19         DEFENDANT COHEN:  I UNDERSTAND.

15:28:30 20         THE COURT:  -- IT HAS PENALTIES THAT

15:28:32 21     ASSURE THAT AT LEAST YOU ARE COGNIZANT TO THE

15:28:38 22     CREDIBILITIES IMPORTANT TO THE COURT.

15:28:40 23         SO I'M GOING TO WAIT UNTIL THESE

15:28:42 24     PROCEEDINGS THAT I'VE OUTLINED.

15:28:44 25         I ASSURE YOU, IT SOUNDS LIKE YOU'RE WELL

23

15:28:46  1    REPRESENTED HERE, THAT I WILL HEAR YOUR

15:28:50  2    EXPLANATIONS AND I'LL TRY AND KEEP THIS MOVING AND

15:28:52  3    DO IT AS QUICKLY AS POSSIBLE.

15:28:54  4              THE DEFENDANT:  THANK YOU.

15:28:54  5              MR. AGAJANIAN:  THANK YOU VERY MUCH, YOUR

15:28:56  6    HONOR.

15:28:56  7              THE COURT:  I'LL SEE YOU AT 1:30 ON THE

15:28:58  8    21ST.

15:28:58  9              MR. AGAJANIAN:  THANK YOU, YOUR HONOR.

15:29:00 10              THE COURT:  YOU'RE REMANDED TO CUSTODY

15:29:02 11    PENDING THESE PROCEEDINGS.

15:29:04 12              (WHEREUPON, THE PROCEEDINGS IN THIS

15:29:04 13    MATTER WERE CONCLUDED.)

         14

         15

         16

         17

         18

         19

         20

         21

         22

         23

         24

         25

                                                              24

                         U.S. COURT REPORTERS

Exhibit "B"

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION


GARY KREMEN, ET AL.,          ) C-98-20718-JW
                              )
            PLAINTIFFS,       ) DECEMBER 4, 2006
                              )
               V.             )
                              )
STEPHEN COHEN, ET AL.,        ) PAGES 1-44
                              )
            DEFENDANTS.       )
_____)


THE PROCEEDINGS WERE HELD BEFORE

THE HONORABLE UNITED STATES DISTRICT

JUDGE JAMES WARE

A P P E A R A N C E S:

FOR THE PLAINTIFFS: MR. IDELL & SEITEL
                    BY:  RICHARD J. MR. IDELL
                    465 CALIFORNIA STREET
                    SUITE 300
                    SAN FRANCISCO, CALIFORNIA 94104

                    DILLON & GERARDI
                    BY:  TIMOTHY P. DILLON
                    4660 LA JOLLA VILLAGE DRIVE
                    SUITE 775
                    SAN DIEGO, CALIFORNIA 92122

FOR THE DEFENDANTS: THE LAW OFFICE OF STEVE EMERY
                    TEICH
                    BY:   STEVEN EMERY TEICH
                    1390 MARKET STREET
                    SUITE 310
                    SAN FRANCISCO, CALIFORNIA 94102

OFFICIAL COURT REPORTER: IRENE RODRIGUEZ, CSR, CRR
                         CERTIFICATE NUMBER 8074

U.S. COURT REPORTERS

Page 2

1    SAN JOSE, CALIFORNIA                    DECEMBER 4, 2006

2                    P R O C E E D I N G S

3

4              (WHEREUPON, COURT CONVENED AND THE

5    FOLLOWING PROCEEDINGS WERE HELD:)

6              THE CLERK:  CALLING CASE NUMBER 98-20718,

7    GARY KREMEN VERSUS STEPHEN COHEN.

8              MR. IDELL:  GOOD MORNING, YOUR HONOR.

9    RICHARD MR. IDELL APPEARING ON BEHALF OF THE

10   PLAINTIFF.

11             MR. DILLON:  TIM DILLON ALSO ON BEHALF OF

12   THE PLAINTIFF.

13             MR. TEICH:  GOOD MORNING.  STEVE TEICH

14   APPEARING FOR THE DEFENDANT WHO IS IN CUSTODY AND

15   HE'S BEING BROUGHT OUT.

16             THE COURT:  VERY WELL.  MR. COHEN HAS

17   JOINED US NOW.  THIS IS A MOTION FOR A RELEASE FROM

18   CUSTODY.

19             MR. TEICH:  YES, YOUR HONOR.

20             IF THE COURT RECALLS AT THE LAST CALLING

21   OF THE CASE BACK IN JUNE, I THINK, 19TH, 2006 AND

22   AT THAT HEARING THE COURT HAD INDICATED THAT, THAT

23   IT HAD CONTEMPLATED HAVING MR. COHEN RELEASED IN

24   THAT IT WAS DIFFICULT FOR HIM TO OBTAIN THE RECORDS

25   THAT WOULD HAVE BEEN NECESSARY FOR HIM TO, TO SHOW

e12d2474-656a-4374-be1d-5ee9be38c4fe

1    WILL GRANT THAT SO THAT YOU CAN TRACE HIS MOVEMENTS

2    AROUND THE WORLD BEFORE THIS SO THAT YOU CAN

3    DETERMINE WHETHER OR NOT HE HAS ACCOUNTS THERE, BUT

4    THIS CONTINUING TO BE HELD IN CUSTODY, IN CUSTODY

5    IS A QUESTION BEFORE THE COURT.

6              MR. IDELL:  WELL, YOUR HONOR, I JOIN WITH

7    MR. DILLON.  I'M VERY CONCERNED THAT IF MR. COHEN

8    IS RELEASED, IT WILL BE FUTILE TO HAVE FURTHER

9    HEARINGS HERE BECAUSE HE WON'T RETURN AND HE WILL

10   BE GONE AND THAT WILL BE THAT AND I THINK IT WOULD

11   HAVE BEEN DONE ON THE BASIS OF, OF, OF THIS LETTER

12   FROM THE BANK WHICH DOESN'T GIVE A COMPLETE, A

13   COMPLETE SET OF INFORMATION AS TO, AS TO WHAT THAT

14   E-MAIL IS ALL ABOUT.

15             I MEAN, ONE THING IS FOR SURE, THE

16   E-MAILS ARE THERE UNLESS, UNLESS, UNLESS MR. COHEN

17   WAS DRAFTING THOSE E-MAILS, BECAUSE HE WAS PLAYING

18   A GAME, OR, OR SOMETHING ELSE, THEY HAVE TO HAVE

19   SOME MEANING.  WHY WOULD ANYBODY DO SUCH A THING?

20   AND THE GOOGLE DECLARATION EXPLAINS QUITE CLEARLY

21   HOW, HOW THE INFORMATION CONTAINED IN THE E-MAIL

22   SHOWS THAT IT WAS, IN FACT, CREATED AND SENT ON

23   THEIR SYSTEM.

24             AND SO IT HAS TO HAVE SOME, SOME MEANING,

25   AND SO, AND SO TO ME WE ARE AT A POINT WHERE WE

e12d2474-656a-4374-be1d-5ee9be38c4fe

1  INTEND TO APPEAR HERE BECAUSE THE FAILURE TO APPEAR

2  IF I ORDER YOU TO BE HERE IS YET ANOTHER VIOLATION

3  OF, OF A COURT ORDER AND SO I WOULD -- MY ORDER OF

4  RELEASE WOULD SAY YOU ARE ORDERED TO BE HERE ON

5  FEBRUARY 26TH AT, AT -- WELL, THIS WOULD BE A CIVIL

6  MATTER.  SO AT 9:00 O'CLOCK FOR, FOR A, FOR A, AN

7  EXAMINATION OF, OF JUDGMENT DEBTOR.

8          AND, AND SINCE I'M, I'M ORDERING THAT

9  HERE WITH YOU PRESENT IN COURT, IT WON'T BE ANY

10  EXCUSE THAT YOU SOMEHOW DIDN'T UNDERSTAND THAT YOU

11  WANTED TO PERSONALLY BE HERE, YOU HAVE TO

12  PHYSICALLY PERSONALLY BE HERE UNLESS COUNSEL

13  STIPULATED TO EXCUSE YOU BECAUSE LOTS CAN HAPPEN

14  BETWEEN NOW AND THEN WHERE YOU MIGHT SATISFY THEM

15  AS TO INFORMATION BUT ALTHOUGH THAT EXAMINATION YOU

16  WOULD BE SWORN BY THE COURT AND BE BOUND TO ANSWER

17  ANY QUESTIONS THAT COUNSEL MIGHT PUT TO YOU FOR

18  THAT PURPOSE.

19          DO YOU UNDERSTAND?

20          THE DEFENDANT:  YES, I DO, SIR.

21          MR. IDELL:  AND, YOUR HONOR, ALONG THOSE

22  LINES, WE DO NOT HAVE ANY ADDRESS FOR MR. COHEN.

23  WE WOULD BE ASKED WE BE ALLOWED TO SERVE ANY PAPERS

24  ON MR. TEICH OR WHOEVER IT IS THAT IS GOING TO BE

25  COUNSEL FOR MR. COHEN FROM THIS DAY FORWARD SO WE

e12d2474-656a-4374-be1d-5ee9be38c4fe

1   DON'T HAVE ANY PROBLEMS WE HAVE RUN INTO IN THE

2   PAST WHERE MR. COHEN IS NOT IN CUSTODY TELLING HIM

3   WE DIDN'T PROPERLY SERVE HIM OR HE DOESN'T HAVE AN

4   ADDRESS.

5        THE STATEMENT WAS MADE EARLY TODAY THAT

6   HE LIVES IN SAN DIEGO AND THAT'S THE FIRST WE HEARD

7   OF THAT BECAUSE WE DON'T HAVE AN ADDRESS BUT TO GET

8   AROUND ALL OF THAT WE WOULD ASK THAT WE BE ALLOWED

9   TO SERVE MR. TEICH AND GOALWIN WITH ANY PAPERS TO

10  BE SERVED ON MR. COHEN SO WE CAN DO THAT.

11       THE COURT:  WHAT IS YOUR RESPONSE?

12       MR. TEICH:  COULD I HAVE ONE MOMENT?  I

13  HAVE NO PROBLEM ACCEPTING SERVICE.  I'LL BE IN

14  CONTACT WITH MR. COHEN, BUT I FULLY EXPECT THAT FOR

15  THE SUBSEQUENT PROCEEDINGS OF A CIVIL NATURE, THAT

16  HE WILL, HE WILL HAVE A DIFFERENT ATTORNEY OR

17  HIMSELF AND HE WILL BE HERE.

18       MY SPECIALTY IS WHAT I HAVE ACCOMPLISHED

19  SO I DON'T WANT TO MAKE ANY MISREPRESENTATION TO

20  THE COURT BUT I WILL CERTAINLY ACCEPT SERVICE AND I

21  WILL BE IN CONTACT WITH MR. COHEN AND IF WE GET A

22  NEW CIVIL ATTORNEY, HE WILL -- I WILL MAKE SURE

23  THAT HE CONTACTS -- SUBSTITUTES IN AND IS IN

24  CONTACT WITH THE COURT AND OTHER COUNSEL

25       THE COURT:  WELL, LET ME DO IT THIS WAY,

e12d2474-656a-4374-be1d-5ee9be38c4fe

1    I'LL CONDITION HIS RELEASE ON YOUR, ON YOUR SERVING

2    AS, AS COUNSEL FOR PURPOSES OF SERVING ANY NOTICE

3    ON MR. COHEN; THAT IS, SERVICE ON, ON YOUR OFFICE

4    AT 1390 MARKET STREET IN SAN FRANCISCO WOULD BE

5    SUFFICIENT FOR PURPOSES OF NOTICE AND SERVICE OF

6    ANY MATTERS THAT HAVE TO BE SERVED ON MR. COHEN.

7              AND, AND, OF COURSE, HE MAY SUBSTITUTE

8    SOMEONE ELSE BUT THAT SUBSTITUTION WOULD REQUIRE,

9    WOULD REQUIRE AN ORDER OF THE COURT; IN OTHER

10   WORDS, I WON'T ACCEPT THE LAWYERS AGREEING TO IT.

11             I WANT SOMEONE PHYSICALLY PRESENT IN

12   COURT AGREEING TO NOW SUBSTITUTE, SUBSTITUTE SO

13   THAT YOU WOULD THEN BE RELIEVED OF ORDER OF COURT.

14   UNTIL RELIEVED, SERVICE ON YOU IS SUFFICIENT FOR

15   SERVICE ON MR. COHEN.  THE IMPORT OF THAT,

16   MR. COHEN, IS THAT IF I ISSUE AN ORDER, AND IT'S

17   SERVED ON MR. TEICH, THAT'S CONSIDERED SERVICE ON

18   YOU.  YOU COULD BE HELD IN CONTEMPT FOR VIOLATING

19   AN ORDER OF THE COURT IF IT'S SERVED ON YOU AND YOU

20   HAVE NOTICE OF IT.  BY MR. TEICH STEPPING FORWARD

21   AND ACCEPTING SERVICE ON YOUR BEHALF, THE COURT

22   WILL REGARD THAT AS PERSONAL SERVICE ON YOU.

23             AND DO YOU UNDERSTAND THAT, SIR?

24             THE DEFENDANT:  I UNDERSTAND THAT AND

25   ACCEPT THAT.

e12d2474-656a-4374-be1d-5ee9be38c4fe

1       THE COURT:  AND DO YOU AGREE TO ALLOW

2  MR. TEICH TO SERVE IN THAT REGARD?

3       THE DEFENDANT:  YES, SIR.

4       THE COURT:  AND, MR. TEICH, YOU'RE

5  AGREEING TO SERVE IN THAT REGARD?

6       MR. TEICH:  ABSOLUTELY.

7       MR. IDELL:  YOUR HONOR, THE NEXT MATTER

8  IS THAT WE WOULD LIKE A STIPULATION THAT WE CAN

9  SUBMIT TO YOU LETTERS ROGATORY FOR THIS OUT OF THE

10 COUNTRY DISCOVERY THAT WE'RE GOING TO HAVE TO DO IN

11 ORDER TO, TO GET FURTHER INFORMATION REGARDING BANK

12 ACCOUNTS.

13      WE DIDN'T HAVE THOSE LETTERS ROGATORY

14 PREPARED FOR TODAY AND WE WANT TO MAKE SURE THAT,

15 THAT GOING FORWARD WE'RE NOT GOING TO HAVE ANY

16 ISSUE OF, OF BEING ABLE TO GET THOSE LETTERS

17 ROGATORY ISSUED.

18      THE COURT:  WHAT -- YOU WON'T -- THAT'S A

19 NORMAL CIVIL DISCOVERY PROCESS.  YOU DON'T NEED A

20 STIPULATION FOR THAT.

21      ALL YOU HAVE TO DO IS TO PREPARE THEM IN

22 PROPER FORM.

23      MR. IDELL:  AND SUBMIT THEM TO YOUR

24 HONOR.

25      THE COURT:  YES.

e12d2474-656a-4374-be1d-5ee9be38c4fe

Exhibit "C"

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Gary Kremen, | NO. C 98-20718 JW |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S APPLICATION FOR RELEASE FROM CUSTODY** |
| v. | |
| Stephen Michael Cohen, et al., | |
| Defendants. | |
| _____/ | |

## I. INTRODUCTION

Defendant Stephen Michael Cohen ("Cohen") brings this Application for Release from Custody.[1] Cohen contends that he has satisfactorily purged himself of civil contempt. The Court conducted a hearing on December 4, 2006. Based on the papers submitted to date and the oral arguments of counsel, the Court GRANTS Cohen's Application for Release from Custody and ORDERS the United States Marshals to release Cohen.

## II. BACKGROUND

The facts of the underlying dispute, now eight years old, are well-known to all involved. The Court briefly reviews only the pertinent background:

On November 27, 2000, the Court granted Plaintiff Gary Kremen's ("Kremen") Motion for Preliminary Injunction. At that time, the Court found that Cohen had (1) improperly thwarted

---

[1] Defendant originally filed this Application ex parte. Upon receipt of the Application, the Court set an expedited briefing schedule and invited opposition from Plaintiff. The Plaintiff timely filed their opposition.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    Kremen's efforts to obtain discovery of financial information; (2) engaged in activities designed to

2    conceal money made from the operation of the sex.com website; and (3) transferred substantial

3    assets to entities for the purpose of avoiding ultimate financial responsibility at the conclusion of the

4    litigation.  (Order Granting Motion for Preliminary Injunction at 2, hereafter, "PI Order," Docket

5    Item No. 440.)  The Court ordered Cohen, *inter alia*, to: (1) return $25 million, plus all revenue

6    generated from sex.com between November 27, 2000 and the entry of final judgment in the action,

7    to the United States to be held by the Court pending final judgment; (2) within three weeks, provide

8    a full accounting of the sex.com domain site operation; and (3) within seven days, to sign all waivers

9    to the release of tax returns, bank account records, and FOIA waivers for all defendants between

10   1995 and the present.  (PI Order at 3-5.)

11           Following the issuance of the preliminary injunction, Kremen alerted the Court that

12   Defendants appeared to be violating the preliminary injunction in several respects, including (1)

13   transferring funds in excess of $1 million; (2) failing to deposit the required money with the Court;

14   (3) failing to sign timely or complete waivers; and (4) failing to submit audits or submitting

15   incomplete audits.  (Order Holding Defendants in Civil Contempt at 3, hereafter, "Contempt Order,"

16   Docket Item No. 541.)  On February 7, 2001, the Court issued an Order to Show Cause why

17   Defendants should not be held in contempt of court.  (See Docket Item No. 498.)  On February 12,

18   2001, the Court ordered Defendants held in contempt, for a related failure to appear at Plaintiff's

19   counsel's office to sign various releases.  (See Docket Item No. 512.).  On February 28, 2001, no

20   Defendant appeared at the hearing on the Court's February 7 Order to Show Cause.  (Contempt

21   Order at 3.)  Defense counsel presented an unsubstantiated claim that Cohen was under legal

22   restraint in Mexico, which the Court disregarded due to improper authentication.  Id.

23           On March 2, 2001, the Court ordered Defendants held in civil contempt and issued a warrant

24   for Cohen's arrest.  (Contempt Order at 5-6.)  As additional sanctions, the Court ordered that

25   Defendants were to be precluded from offering any evidence concerning the income and expenses

26   generated in connection with sex.com, and the alleged bona fide transfer of the domain name

27

28                                                      2

**United States District Court**
For the Northern District of California

1   sex.com from Cohen or any other defendant to any other entity.  Moreover, the Court found

2   established for purposes of the action that Defendants Ynata, OFIL, Sandman, and "any other

3   Cohen-affiliated entity connected in any way with the domain name sex.com, are sham entities and

4   are, as a matter of fact and law, the alter-egos of Cohen and the alter-egos of one another." Id.

5   Subsequently, on April 3, 2001, judgment was entered for Kremen and against Defendants in the

6   amount of $65 million.  (See Docket Item No. 596.)

7        Cohen was arrested by the United States Marshal on October 27, 2005.  He is currently

8   incarcerated in the Santa Clara County Main Jail.  Between October 2005 and June 2006, the Court

9   held monthly status conferences regarding the status of Cohen's contempt.  At issue during the last

10  status conference in June 2006 was whether Cohen had, in October 2005, directed the Nordea Bank

11  of Lithuania to transfer approximately $4.1 million USD to the Deutsche Bank in the name of

12  Mexico Lending, an affiliated entity of Cohen's.  Both sides have presented evidence on this

13  question.

14       Kremen has presented the following evidence:

15       On December 12, 2005, Kremen subpoenaed Google to request information relating to

16  Cohen and his known related or affiliated entities.  Cohen signed a waiver to allow Kremen to

17  access his "gmail," (Google electronic mail) account.  In August 2006, Google responsively

18  produced documents relating to the scohen15@gmail.com account.  (Declaration of Nadya Y.

19  Spivack in Support of Plaintiff's Opposition to Defendant's Ex Parte Application for Release from

20  Custody or in the Alternative an Expedited Hearing Date ¶ 3, hereafter, "Decl. Spivack," Docket

21  Item No. 1235.)  Two emailss were sent from scohen15@gmail.com to info@nordea.lt on October 4,

22  2005 and October 16, 2005.  (Decl. Spivack ¶ 4.)  The emails contained an attached memo, which

23  stated the following:

24       To: Nordea Bank Lithuania
         From: Stephen M. Cohen
25       CODE: MAVERICK3452

26

27

28                                                    3

1    Date: October 28, 2006[2]
     To: Hans Dizengof
2    Re: WIRE TRANSFER

3    Dear Hans:
     You are authorized to send a wire in the amount of $3,476,000.00 Euros to the
4    "DEUTSCHE BANK TRUST COMPANY.
     This information listed on my list as A10
5    Please list the sender as Mexico Lending
     SEND ONLY through SWIFF and PLEASE do not send these funds through the
6    United States or through a correspondent bank in the United States.
     I received the new credit cards via DHL and I thank you for your assistance.  Please
7    deduct these credit card bills each month from this account.
     I should be back in Europe in three weeks and look forward to talking to you again.
8    Thanks,
     Stephen M. Cohen
9    +52 664 648-3633

10   (Decl. Spivack, Exs. 1, 2.)  According to Google, both the October 4 and the October 16 emails were

11   sent from Internet Protocol ("IP") address number 209.205.192.8.  (Declaration of Edmond Choi ¶¶

12   6-7, 10-11, hereafter, "Decl. Choi," Docket Item No. 1236.)  An ARIN WHOIS Database Search for

13   that IP address lists Pacnet S.A. de C.V. as the owner.  (Decl. Spivack ¶ 9.)  During October 2005,

14   WLCom controlled the IP netblock of 209.205.192.1 - 209.205.192.152, and identified

15   209.205.192.8 as an "in house" IP address used by employees and staff of WLCom.  (Decl. Spivack,

16   Ex. 6.)  Cohen maintained an office at WLCom's facility prior to his arrest, and typically worked

17   from late at night to early in the morning.  (Decl. Spivack, Ex. 7, 25:25-26:3, Ex. 8, 31:16-21, 39:4-

18   20.)  The two emails in question were sent at 2:54 AM and 5:59 PM, respectively.  (Decl. Choi, Exs.

19   A, B.)

20        Cohen has presented the following evidence:

21        Cohen testified extensively on these matters at his September 29, 2006 deposition.  With

22   respect to Nordea Bank in Lithuania and Deutsche Bank, he stated that he had never had an account

23   at either bank, knew no one at either bank, and had not received credit cards from either bank.  (Ex

24   Parte Application for Release from Custody or in the Alternative An Expedited Hearing Date Ex. D

25   _____

26        [2]  The date of Cohen's memo does not match the date of the email because Cohen used an
     automatic date function, such that the document will adjust the date to whatever date the document
27   is opened.  (Decl. Spivack ¶ 7.)

28                                             4

United States District Court
For the Northern District of California

1    at 465:21-466:10, hereafter, "Ex Parte Application," Docket Item No. 1226.)  Cohen stated that the

2    "gmail" account scohen15@gmail.com was opened to receive and store large documents because it

3    provided a significant amount of free space.  (Ex Parte Application, Ex. D at 598:25-599:8.)  He

4    provided the password to WLCom employees, a "couple of [his] friends," and possibly his daughter,

5    Jhuliana Cohen.  (Ex Parte Application Ex. D, 596:17-598:24.)

6          Cohen admitted to using the password "maverick" in the past, but stated that he had never

7    used "maverick3542."  (Ex Parte Application Ex. D at 601:15-18.)  He testified that he had never

8    received a DHL letter or a credit card from Nordea Bank.  (Ex Parte Application, Ex. D at 603:11-

9    18.)  Cohen has presented a certification from the Lithuanian Branch of the Nordea Bank which

10   states in pertinent part as translated into English:

11        We hereby inform that **Mr. Stephen Michael Cohen** and **Mexico Lending** does not
          have and never had any bank account with Nordea Bank Finland Plc Lithuanian
12        Branch.  A money transfer of EUR 3,746,000 from Nordea Bank Finland Plc
          Lithuanian Branch to Deutsche Bank has not been made in October 2005.
13

14   (Ex Parte Application Ex. H.)  Cohen further submitted evidence that no "Hans Dizengof" was

15   employed by Nordea Bank's Lithuania Branch.  (Ex Parte Application Ex. I.)

16                              **III.  STANDARDS**

17         Whether contempt is civil or criminal is determined by the purpose of the contempt sanction.

18   A civil contempt sanction "is intended to coerce the contemnor to comply with the court's orders in

19   the future, and the sanction is conditioned upon continued noncompliance."  In contrast, a criminal

20   contempt sanction "is intended to punish past conduct, and is imposed for a definite amount or

21   period without regard for the contemnor's future conduct."  Richmark Corp. v. Timber Falling

22   Consultants, 959 F.2d 1468, 1481 (9th Cir. 1992).

23         The standard for finding a party in civil contempt is as follows:  the moving party has the

24   initial burden to show by clear and convincing evidence that the contemnor violated a specific,

25   definite Court order.  The burden then shifts to the contemnor to demonstrate why he or she was

26   unable to comply.  Federal Trade Comm'n v. Affordable Media, LLC, 179 F.3d 1228, 1239 (9th Cir.

27

28                                        5

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1999).  A contempt proceeding does not "open to reconsideration the legal or factual basis of the

order alleged to have been disobeyed and thus become a retrial of the original controversy."  United

States v. Rylander, 460 U.S. 752, 756-57 (1983).  This is because "[t]he procedure to enforce a

court's order commanding or forbidding an act should not be so inconclusive as to foster

experimentation with disobedience."  Id.

   A defendant may assert a present inability to comply with the order in question; where

compliance is impossible, neither the moving party nor the court has any reason to proceed with a

civil contempt action.  Id. (citing Maggio v. Zeitz, 333 U.S. 56, 75-76 (1948)).  The defendant bears

the burden of production.  Id. (internal citations omitted).  A mere assertion of inability to comply is

insufficient; rather, the party asserting impossibility as a defense must show "categorically and in

detail" why he or she is unable to comply.  Affordable Media, 179 F.3d at 1241.

## IV.  DISCUSSION

   In its March 2, 2001 Order, the Court directed that Cohen be held in custody until he

performs the following four actions:

| | | |
|---|---|---|
| a) | return[s] to the United States and deposit[s] with the Court $25,000,000 or such lesser sum as he shows is warranted by his economic circumstances; |
| b) | return[s] to the United States all revenue generated from sex.com; |
| c) | provide[s] a full accounting of the sex.com domain name operation; |
| d) | effect[s] the turnover of $1.1 million in bank funds to foreign accounts after being ordered by the Court not to transfer any such funds. |

(March 2, 2001 Order at 6.)  The Court is now satisfied that Cohen has complied with these

conditions to the best of his ability.  Cohen has repeatedly testified that he has no further funds to

pay and is not in a position to locate any further documents while in jail.  (See, e.g., Ex Parte

Application, Ex. D at 585:7-14, 627:8-629:7.)  The Court is satisfied that Cohen has provided an

accounting of assets to the extent that he is able from jail.  (Ex Parte Application, Ex. F.)  Lastly,

Cohen contends that he made a bona fide attempt to recover the more than one million dollars that

he wire transferred at the time of the Court's preliminary injunction of November 27, 2000, but that

his efforts were stymied by the Mexican authorities.  (See, e.g., Ex Parte Application at 9.)  Cohen

6

1   has not offered adequate evidence in this regard; however, the Court finds that holding Cohen in

2   prison at this point would do nothing to effect the turnover of these funds six years after they were

3   transferred.

4        Kremen has provided no evidence to rebut Cohen's contentions.  Specifically, Kremen's

5   opposition is filled with unsupported conclusory statements and speculation.  Aside from the two

6   emails described above, Kremen has provided no evidence that (1) Cohen actually had or has a bank

7   account with Nordea Bank in Lithuania; (2) Cohen actually had or has a bank account with Deutsche

8   Bank; (3) any bank actually received the emails purportedly sent by Cohen in October 2005; (4) any

9   transfer of funds, let alone a transfer of nearly $3.5 million Euros, took place.[3]  Indeed, in the months

10  since Cohen has been incarcerated, Kremen has uncovered *no* significant evidence that Cohen has

11  outstanding funds in previously unknown bank accounts, or any other outstanding assets.  Instead,

12  Kremen invites the Court to join him in speculating where Cohen's allegedly hidden assets,

13  accounts, and personal belongings might be:

14       The fact that Plaintiff is not able to confirm the account information at Nordea Bank
         is due to the fact that the account is not under Cohen's own name.  The releases
15       Cohen provided to Plaintiff do not release accounts held in the name of his wife,
         daughters, other individuals or entities that Cohen likes to use.  The purported
16       declaration from Nordea Bank that Cohen provides to this Court states that <u>Cohen</u>
         <u>does not maintain an account</u> – but fails to provide a list of all of his other alter ego
17       and affiliated entities – several of which likely remain unknown to Plaintiff or anyone
         other than Cohen himself.
18       . . .

19       Despite Cohen's claims of ignorance about his personal belongings, Plaintiff is
         certain they reside with Cohen's wife, Rosa Cohen in Mexico, that Cohen knows
20       about his documents whereabouts and that he is behind his documents disappearance.
         [sic] . . . The Court will also recall that at a hearing in this matter in March 2006,
21       Cohen's attorney was able to produce Cohen's cancelled passport delivered to him by
         Rosa Cohen.  It is no stretch of the imagination to believe she maintains his other
22       documents until he is released.
23       . . .

24       Kremen is informed and believe that Cohen uses and continues to use [named friends,
         family members, and attorneys], among others, and enlists their assistance in

25   _____

26       [3]  Under the circumstances, it is wholly unclear who sent the emails in question and who, if
     anyone, received it.  These questions are unimportant, however, in the absence of any evidence that
27   the 3.5 million Euros in question exist.

28                                       7

conferencing bankers and third parties in order to effectuate the transfer of assets in violation of this Court's orders.
. . .

Kremen is informed and believed that Cohen actively harassed and threatened his wife, Rosa Cohen, to prevent the completion of the settlement agreement [relating to various properties in Mexico.] Kremen is further informed and believes that Cohen actively worked with his Mexican attorney, Gustavo Cortez, to fraudulently file a lien on the real properties and thwart any efforts at transferring the properties.

(Plaintiff's Opposition to Defendant's Ex Parte Application for Release From Custody or in the Alternative an Expedited Hearing Date at 8, 10-13, Docket Item No. 1232.) The Court declines this invitation. Cohen has been incarcerated for more than one year, during which time Kremen has failed to locate evidence of hidden bank accounts or other assets. Under these circumstances, the only purpose of Cohen's continued incarceration would be punitive—an impermissible purpose for civil contempt sanctions. Accordingly, the Court finds it proper to order Cohen's release from prison.

## V. CONCLUSION

The Court GRANTS Cohen's Application for Release from Custody with the following conditions:

1)   Cohen shall appear on **February 26, 2007 at 9 AM** for an examination of judgment/debtor satisfaction.

2)   Service of papers upon Steve Teich, Cohen's current counsel, shall be deemed effective service upon Cohen. If Cohen should wish to substitute attorney, substitution must be approved by the Court. The motion for substitution of attorney shall be noticed in accordance with the Civil Local Rules of the Court.

Dated: December 5, 2006

_____
JAMES WARE
United States District Judge

8

**THIS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Chad S. Hummel chummel@manatt.com
Christopher L. Wanger cwanger@manatt.com
David Henry Dolkas ddolkas@mwe.com
George G. Weickhardt gweickhardt@ropers.com
Glen H. Isaacs invalidaddress@invalidaddress.com
Jack S. Yeh jyeh@manatt.com
James M. Wagstaffe wagstaffe@kerrwagstaffe.com
John P. Kern jkern@manatt.com
Karl Stephen Kronenberger karl@kronenbergerlaw.com
Patricia De Fonte Patricia.DeFonte@idellseitel.com
Richard J. Idell richard.idell@idellseitel.com
Steve Emery Teich steve.teich@sbcglobal.net
Terri R Hanley law@terrihanley.com

**Dated: December 5, 2006**                        **Richard W. Wieking, Clerk**


                                                  By:___/s/ JW Chambers_____
                                                      **Elizabeth Garcia**
                                                      **Courtroom Deputy**

**United States District Court**
For the Northern District of California